```
USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED:
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PRESCHOOLS OF AMERICA (USA) INC,

                Plaintiff,

                v.

NEW YORK CITY DEPARTMENT OF
EDUCATION, *et. al.*,

                Defendants.

No. 17-CV-5027 (RA)

MEMORANDUM
OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

    Plaintiff Preschools of America (USA), Inc. moves, pursuant to Federal Rules of Procedure 59(e) and 60(b), to vacate this Court's September 6, 2018 judgment granting the motion to dismiss brought by Defendants the City of New York ("the City"), the New York City Department of Education ("DOE"), former DOE chancellor Carmen Farina, DOE's head of contracts and purchasing David Ross, and a John Doe official at the DOE. Plaintiff also seeks leave to file a third amended complaint. For the reasons that follow, Plaintiff's motion is DENIED.

## BACKGROUND

    The Court assumes familiarity with the factual background and procedural history of this case, which were set forth in detail in its September 2018 Opinion. *See Preschools of Am. (USA), Inc. v. New York City Dep't of Educ.*, No. 17-CV-5027 (RA), 2018 WL 4265886 (S.D.N.Y. Sept. 6, 2018).

    According to Plaintiff's proposed third amended complaint ("PTAC"), Dkt. 47-1, Plaintiff is a corporation that provides child daycare services in New York City, which is currently owned by Ziming Shen, Jr. and his two siblings. PTAC ¶¶ 1, 12, 16. From its formation in 2003 until

2011, the company was owned by Shen, Jr.'s parents, Xiaoping Fan and Ziming Shen, Sr. *Id.* ¶¶ 18-21. In 2013, Fan and Shen, Sr. were convicted in the Eastern District of New York of embezzling funds from their school network. *See id.* ¶ 24; Sept. 2018 Op. at *1.

Defendants administer the City's Universal Pre-Kindergarten ("UPK") program. PTAC ¶ 25. Defendant DOE rejected Plaintiff's proposals for UPK vendor contracts in 2014 and 2015 on the grounds that Plaintiff was "a non-responsible vendor" in light of Fan and Shen Sr.'s criminal convictions. PTAC ¶ 43. In February 2016, Plaintiff again submitted proposals for UPK vendor contracts for seven of its schools. *Id.* ¶ 41. DOE rejected three of those proposals because the schools failed to meet geographic-demand thresholds, and one proposal because the school did not meet certain quality thresholds. *Id.* ¶¶ 52, 55. As for the remaining three school sites, DOE requested that Plaintiff show cause why it should not be deemed a non-responsible vendor, to which Plaintiff timely responded. *Id.* ¶¶ 76–77. On September 1, 2016, having not yet received a final decision, Plaintiff sent DOE a letter that expressed concern of unfair treatment, citing the awarding of contracts to other vendors with records of improper or unlawful behavior. *Id.* ¶¶ 78–80. On November 14, 2016, after Plaintiff initiated a New York State Article 78 proceeding against Defendants, DOE deemed Plaintiff a non-responsible vendor, "effectively denying a UPK vendor contract for all of Plaintiff's schools." *Id.* ¶ 86.

On June 5, 2017, Plaintiff brought this action pursuant to 42 U.S.C. § 1983. The First Amended Complaint, filed on July 11, 2017, alleged (1) that DOE violated the Equal Protection Clause of the Fourteenth Amendment by treating Plaintiff differently than similarly situated vendors; (2) that DOE violated Plaintiff's right to due process by denying it the opportunity to compete for UPK vendor contracts on an equal footing with other vendors; and (3) that DOE's denial of vendor contracts constituted retaliation against Fan's past public criticism of the

Case 1:17-cv-05027-RA   Document 56   Filed 12/29/20   Page 3 of 7

department, in violation of the First Amendment. After Defendants moved to dismiss the First Amended Complaint for failure to state a claim, Plaintiff sought leave to amend its complaint for the second time.

On September 6, 2018, the Court granted Defendants' motion to dismiss the First Amended Complaint and denied leave to amend. With regard to the equal protection claim, the Court concluded that Plaintiff did not plausibly allege that "Defendants relied on an impermissible consideration, bad faith, or malicious intent in denying it UPK contracts." Sept. 2018 Op. at *7. The Court dismissed the due process claims on the basis that there is no protected property interest in the status of public-contract applicant. Lastly, Plaintiff's failure to allege a plausible causal connection between any protected speech and the subsequent denial of vendor contracts compelled dismissal of its First Amendment retaliation claims. Plaintiff's claim of retaliation relied on protests led by Fan in 2001 and 2002—before the company was even formed—and activity from 2016 that took place after DOE had preliminarily deemed Plaintiff a non-responsible vendor and issued a written decision denying proposals for four of its school sites. *Id.*

On October 4, 2018, Plaintiff filed the instant motion pursuant to Federal Rules of Civil Procedure 59(e) and 60(b) to modify and vacate the judgment that dismissed its retaliation claims. Plaintiff also seeks leave to amend its complaint pursuant to Rule 15(a)(2) in order to introduce new factual allegations—namely, additional denials of UPK contract proposals as well as a letter Fan sent to DOE in June 2011—and to plead a single cause of action for First Amendment retaliation. For the reasons set forth below, Plaintiff's motion is denied.

3

## STANDARD OF REVIEW

The standard for granting a reconsideration motion "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusions reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). A motion for relief from judgment is "generally not favored," and properly granted only where the moving party makes a "showing of exceptional circumstances." *Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 55 (2d Cir. 2004) (internal quotation marks omitted).

Relief under Rule 59(e) is properly granted only upon a showing of an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice. *See, e.g., Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 142 (2d Cir. 2020). "A Rule 59(e) motion may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *4 Pillar Dynasty LLC v. New York & Co., Inc.*, 933 F.3d 202, 216 (2d Cir. 2019) (internal quotation marks omitted). Rule 60(b) authorizes courts to relieve a party from a final judgment or order for, *inter alia,* mistake or inadvertence, "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)," or "any other reason that justifies relief." Fed. R. Civ. P. 60(b).

## DISCUSSION

Plaintiff's motion seeks relief primarily on the basis of purportedly new evidence. The PTAC adds allegations 1) that Fan wrote a letter on June 4, 2011 to DOE accusing another daycare of unlawful conduct, which impelled an internal investigation within DOE; and 2) that the DOE in 2014 and 2017 declined to award UPK contracts to two other organizations that rented space

from Fan and Shen, Sr. on the basis that they "failed quality threshold requirements."  PTAC ¶ 132(A).  According to Plaintiff, the allegation that a purported exercise of protected speech was followed three years later by purportedly discriminatory treatment cures the pleading deficiencies that compelled the dismissal of its amended complaint.  The Court disagrees.

Even assuming that these allegations of conduct dating back years qualify as "new" for purposes of post-judgment relief, they do not "alter the conclusion[] reached by the court" in September 2018 that Plaintiff failed to state a claim for retaliation under the First Amendment. *Shrader*, 70 F.3d at 257.  In essence, Plaintiff claims that Defendant denied UPK contracts to Plaintiff "in retaliation for Fan's public criticism of defendant DOE administering the UPK program as it related to the Chinese community."  PTAC ¶ 160.  The Court previously found implausible the allegation that any causal connection existed between Fan's protest activity and DOE's supposed retaliation, due to the nearly two-decade lag between the two.  *See* Sept. 2018 Op. at *5.  This 'new' evidence does not alter the Court's conclusion.  The three-year lag between the 2011 letter and the first denial of a UPK contract is, as before, "too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action."  *Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 554 (2d Cir. 2001).  Delays longer than one year are routinely deemed insufficient to support the necessary inference of discriminatory retaliation.  *See e.g.*, *Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free School Dist.*, 411 F.3d 306 (2d Cir. 2005) (affirming dismissal in part because the passage of more than a year between protected activity and adverse action defeated an inference of causation).  More importantly, the 2014 denials concerned other daycares that were not owned by Plaintiff, and thus do not qualify as adverse action against the Plaintiff.   The new allegations simply do not

support an inference of causation between Fan's activity and DOE denials of Plaintiff's UPK applications.

Moreover, the Court cannot reasonably infer from the 'new' allegation that DOE agents in 2014 told staff at a preschool—which was not formally affiliated with Plaintiff—that their UPK application was rejected "because of their association with Plaintiff," PTAC ¶ 132(A), that Fan's protected speech was a "substantial motivating factor" in DOE's determination that Plaintiff was a non-responsible vendor. *Smith v. Cty. of Suffolk*, 776 F.3d 114, 118 (2d Cir. 2015). The Complaint itself acknowledges that DOE reached that determination "based upon Fan and Shen[ Sr.]'s criminal convictions," PTAC ¶ 43, casting further doubt on the plausibility that the denials were connected with speech made years earlier from a former principal of the company. As before, "the factual allegations here are simply too thin, and the time gap too wide, to sustain an animus-based retaliation claim." Sept. 2018 Op. at *5. Accordingly, Plaintiff's motion for relief on the basis of newly available evidence is denied.

Plaintiff's invocations of Rules 60(b)(1) and (b)(6) are similarly unavailing. Because its memorandum of law does not specify the "mistake, inadvertence, surprise, or excusable neglect" that purportedly compels reconsideration of the September 2018 decision, Plaintiff is not entitled to relief under that provision. Fed. R. Civ. P. 60(b)(1). As for Rule 60(b)(6), the Court of Appeals for the Second Circuit has described that provision as "properly invoked only when there are extraordinary circumstances justifying relief, when the judgment may work an extreme and undue hardship, and when the asserted grounds for relief are not recognized in [the other clauses] of the Rule." *Metzler Inv. Gmbh*, 970 F.3d at 143. Mere citation of the provision—without any explanation of how it applies under these circumstances—is insufficient to carry Plaintiff's burden under the rule.

Lastly, denial of relief under Rules 59(e) and 60(b) compels denial of Plaintiff's motion to amend its complaint pursuant to Rule 15(a)(2). "It is well established that 'a party seeking to file an amended complaint post-judgment must first have the judgment vacated or set aside pursuant to Fed. R. Civ. P. 59(e) or 60(b).'" *Id.* at 142 (quoting *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (alterations omitted)).

The Clerk of Court is respectfully directed to terminate items 47, 50, and 54 on the docket.

SO ORDERED.

Dated:   December 29, 2020
         New York, New York

_____
Ronnie Abrams
United States District Judge